IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

ELBERT WELCH,

                              Plaintiff,                Civil Action No.

     v.                                     9:06-CV-00812 (LEK/DEP)

DONALD SELSKY, *et al.*,

                              Defendants.

_____

APPEARANCES:              OF COUNSEL:

FOR PLAINTIFF:

ELBERT WELCH, *Pro Se*

FOR DEFENDANTS:

HON. ANDREW M. CUOMO       CHARLES J. QUACKENBUSH, ESQ.
Attorney General of                Assistant Attorney General
the State of New York
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

     Plaintiff Elbert Welch, a New York State prison inmate who is

proceeding *pro se* and *in forma pauperis*, has commenced this action

pursuant to 42 U.S.C. § 1983 alleging deprivation of his civil rights.  In his

complaint the plaintiff, an active litigator who is no stranger to this and other federal courts, having initiated a myriad of legal proceedings since the onset of his incarceration, asserts numerous claims related to his confinement at three different correctional facilities alleging, *inter alia*, that various prison officials have failed to protect him from known dangers, conspired to issue false misbehavior reports against him, and placed him in cells with individuals who posed a threat to his safety.  Plaintiff additionally contends that several television broadcasting corporations have actively participated in or furthered the unlawful actions of prison officials by regularly discussing his circumstances on television principally through news outlets, utilizing various newscasters and other television personalities.  In his complaint, in addition to requesting injunctive relief, plaintiff seeks recovery of $10 million in compensatory and punitive damages against each state defendant, as well as $1 billion in compensatory and punitive damages against each corporate defendant individually, or $20 billion on a joint and several basis.

Currently pending before the court is a motion by the defendants seeking revocation of plaintiff's *in forma pauperis* ("IFP") status and conditional dismissal of his complaint under 28 U.S.C. § 1915(g), absent

2

his prepayment in full of the applicable filing fee.  Defendants' motion is predicated upon the dismissal of three or more such inmate civil rights actions previously brought by the plaintiff, but found to be lacking in palpable merit.  Plaintiff has opposed defendants' motion by invoking the imminent danger exception to section 1915(g), contending that despite the dismissal of three or more civil rights cases previously brought by him, he should be permitted to proceed with this action because he faces imminent danger of serious physical injury based on the new facts and events recited in his complaint.  Plaintiff also has cross-moved for the imposition of sanctions against defendants under Rule 11 of the Federal Rules of Civil Procedure for what he perceives to be the filing of a frivolous motion to dismiss.

Because I agree that plaintiff is subject to the three strikes provision of section 1915(g), and has not established a basis to invoke the limited, imminent danger exception to that rule, I recommend that defendants' motion be granted.  Accordingly, I also recommend that plaintiff's motion for sanctions be denied as moot.

I.     UNDERLINE

Plaintiff is a prison inmate entrusted to the custody of the New York

State Department of Correctional Services ("DOCS"); at the various times relevant to his constitutional claims, plaintiff was confined within either the Auburn Correctional Facility ("Auburn") located in Auburn, New York, where he was confined when this action was commenced; the Clinton Correctional Facility ("Clinton") located in Dannemora, New York; or the Gouverneur Correctional Facility ("Gouverneur") located in Gouverneur, New York. *See generally* Complaint (Dkt. No. 1). In his complaint, plaintiff alleges that while confined at Auburn he was subject to assorted acts of a conspiratorial nature, including prison officials forcing him to house in double-bunked cells in order to provoke him into engaging in conduct that would result in disciplinary action, as well as attempting to place him in disciplinary keeplock confinement. *Id.* at ¶¶ 1-3, 27. Plaintiff claims that while at Clinton, several defendants perpetuated this conspiracy by lodging false misbehavior reports against him. *Id.* at ¶ 5. At Gouverneur, this conspiracy continued in the nature of corrections officials again forcing plaintiff to double-bunk with inmates who attempted to injure him and to provoke him into engaging in physical altercations. *Id.* at ¶ 6. Plaintiff further maintains that he was forced to house with inmates who were inflicted with contagious diseases which threatened his own physical

4

well-being.  *Id.* at ¶ 12.  According to plaintiff, the defendants have used these housing conditions to place him in imminent danger of serious physical injury, including danger of disease, food poisoning, and physical assault*. Id.* at ¶ 16.   Plaintiff also accuses defendants Stone, Sorrell, and Taylor, among others at Gouverneur, of retaliating against him in furtherance of the conspiracy by withholding his personal property upon learning that he had obtained administrative modification of his six-month term of confinement in a prison special housing unit ("SHU").  *Id.* at ¶ 25. Plaintiff alleges that the Federal Bureau of Investigations ("FBI") has infiltrated this conspiracy, which has existed for many years.  *Id.* at ¶ 16.

In addition to these assertions, plaintiff contends that several television corporations, news broadcasters, television personalities, and professional athletes have participated in this conspiracy by discussing it on the air on a regular basis.  *Id.* at ¶¶ 18-22, 28-32.

## II.   PROCEDURAL HISTORY

Plaintiff commenced this action on June 29, 2006.  Dkt. No. 1. Named as defendants in plaintiff's complaint are the State of New York; Eliot Spitzer, the former New York State Attorney General; Donald Selsky, the DOCS Director of Special Housing/Inmate Discipline; Glenn Goord,

the former DOCS Commissioner; Dale Artus, the superintendent at

Clinton; Captain Brown, allegedly employed at Clinton; Corrections

Officers T. Charland, R. Lincoln, T.M. Stone, and Sorrell; Hearing Officer

Eggleston, Correctional Counselor Logan; individuals identified only as

Lieutenants Quimette and Sawyer, and Captain Coryer; and

Superintendents Justin Taylor, Graham, Bellnier, and Rourke (collectively,

"the state defendants"). *Id.* Also named as defendants are seventy-some

television corporations, newscasters, television personalities and

professional athletes (collectively, "the broadcast defendants"). *Id.*

By order issued by Senior District Judge Lawrence E. Kahn on

November 30, 2006, the broadcast defendants were dismissed from this

civil rights action, *sua sponte*, based upon the plaintiff's failure to allege

that they were acting under color of state law, and his presentment of only

vague allegations of the existence of a conspiracy between the broadcast

defendants and the state defendants. Dkt. No. 6 at 3-4. Judge Kahn also

reasoned that Welch should not be permitted to proceed *in forma pauperis*

against the broadcast defendants because his allegations against them

were clearly baseless and factually frivolous. *Id.* at 4-5. In that order,

Judge Kahn additionally dismissed the State of New York from the action

on the ground that suits against the state are barred by the Eleventh

Amendment to the United States Constitution.  *Id.* at 5.  Confronted with

plaintiff's claim of imminent danger as articulated in his complaint, Judge

Kahn preliminarily granted Welch's application to proceed *in forma*

*pauperis*; he cautioned, however, that his IFP status could be revoked in

the event of a later finding, after the filing of a response from the

remaining state defendants, that plaintiff is not in imminent danger or not

otherwise entitled to proceed *in forma pauperis*.  *Id.* at 6.

On March 12, 2007, plaintiff sought to amend his complaint to add to

his action the broadcast defendants previously dismissed by the court,

also requesting inclusion of several new defendants and additional

allegations in support of his claims against the broadcast defendants.  Dkt.

No. 38.  That request was denied by me in an order dated June 4, 2007.

Dkt. No. 44.

In lieu of filing an answer, the state defendants moved to revoke

plaintiff's IFP status on May 3, 2007, pursuant to the three strikes

provision of 28 U.S.C. § 1915(g), and to dismiss his complaint

conditionally.  Dkt. No. 41.  Plaintiff has opposed defendants' motion, and

cross-moved for the imposition of sanctions on the ground that the motion

is frivolous.  Dkt. Nos. 43, 46.  These motions, which are now ripe for

determination, have been referred to me for the issuance of a report and

recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern

District of New York Local Rule 72.3(c).[1]  *See also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

    A.   Three Strikes Provision Generally

In their motion defendants invoke 28 U.S.C. § 1915(g), arguing that

under that section plaintiff's litigation history, which includes at least three

merit-based dismissals, warrants revocation of his IFP status.  Section

1915(g), which was enacted as part of sweeping inmate litigation reform

brought about by adoption of the Prison Litigation Reform Act of 1996

("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), though

engendering far less litigation than some of its PLRA counterparts

including, notably, the exhaustion of remedies requirement of 42

---

[1]     Plaintiff's motion for sanctions would ordinarily fall within my non-consensual jurisdiction under 28 U.S.C. § 636(b).  *See Robinson v. Eng*, 148 F.R.D. 635, 639 (D. Neb. 1993) ("[A] magistrate judge has the authority to issue orders resolving Rule 11 issues.") (citing, *inter alia*, 28 U.S.C. § 636(b)(1)(A) (indicating that a magistrate judge can "hear and determine any pretrial matter pending before the court")).  This authority is not without exception, however, in that a magistrate judge cannot issue sanctions which "fall within the eight so-called dispositive motions excepted by Section 636(b)(1)(A)."  *DePalma v. Nike, Inc.*, No. 95CV1428, 1998 WL 690880, at *6 n.4 (N.D.N.Y. Sept. 30, 1998) (Pooler, D.J.) (citing, *inter alia*, *Robinson*).  Because plaintiff's motion for sanctions is intertwined with, and hinges on, my determination regarding defendants' dispositive motion to dismiss this action, I have chosen to format my response to that motion as a recommendation to Judge Kahn.

U.S.C. § 1997e(a), provides that

> [i]n no event shall a prisoner bring a civil action or
> appeal a judgment in a civil action or proceeding
> under this section if the prisoner has, on 3 or more
> prior occasions, while incarcerated or detained in
> any facility, brought an action or appeal in a court
> of the United States that was dismissed on the
> grounds that it is frivolous, malicious, or fails to
> state a claim upon which relief may be granted,
> unless the prisoner is under imminent danger of
> serious physical injury.

28 U.S.C. § 1915(g); *see also Polanco v. Hopkins*, __ F.3d __, 2007 WL
4258724, at *1 n.1 (2d Cir. Dec. 6, 2007). The manifest intent of
Congress enacting this "three strikes" provision was to curb prison inmate
abuses and to deter the filing of multiple, frivolous civil rights suits by
prison inmates. *Tafari v. Hues*, 473 F.3d 440, 443-44 (2d Cir. 2007); *Gill
v. Pidlypchak*, No. 02-CV-1460, 2006 WL 3751340, at *2 (N.D.N.Y. Dec.
19, 2006) (Scullin, S.J. & Treece, M.J.). The prophylactic effect
envisioned under section 1915(g) is accomplished by requiring a prisoner
who has had three previous strikes to engage in a cost-benefit analysis in
some ways similar to that which other civil litigants must make before
deciding whether to commence suit, accompanied by the filing of the full
fee – that is, to assess whether the result to be achieved justifies the filing
fee expenditure in advance, rather than in installments. *See Ibrahim v.*

9

*District of Columbia*, 463 F.3d 3, 6 (D.C. Cir. 2006).  As the Second Circuit

has noted, in the context of PLRA amendments requiring inmates to

authorize prison officials to make deductions from inmate accounts to be

applied as partial payments of appellate filing fees for prisoners granted *in*

*forma pauperis* status,

> [p]rior to the enactment of the *in forma pauperis*
> amendments, inmates suffered no economic
> disincentive to filing lawsuits.  Indeed, the very
> nature of incarceration – prisoners have substantial
> free time on their hands, their basic living expenses
> are paid by the state and they are provided free of
> charge the essential resources needed to file
> actions and appeals, such as paper, pens,
> envelopes and legal materials – has fostered a
> "'nothing to lose and everything to gain'"
> environment which allows inmates indiscriminately
> to file suit at taxpayers' expense.

*Nicholas v. Tucker,* 114 F.3d 17, 20 (2d Cir. 1997), *cert. denied sub nom.*,

*Nicholas v. Miller*, 523 U.S. 1126, 118 S. Ct. 1812 (1998) (citations

omitted); *see also Gill*, 2006 WL 3751340, at *2.

The question of whether the dismissal of a prior action qualifies as a

strike, for purposes of section 1915(g), is a matter of statutory

interpretation, and as such a question for the court.[2]  *Tafari*, 473 F.3d at

---

[2]      The Second Circuit has expressed its view that the time for determination of
"strikes" is only when the section 1915(g) issue is ripe for adjudication, and that

442-43.  In determining whether a dismissal satisfies the failure to state a claim prong of the statute, implicated in this case, courts have drawn upon the provisions of Rule 12(b)(6) of the Federal Rules of Civil Procedure for guidance, particularly in light of the similarity in phrasing utilized in the two provisions.  *Tafari*, 473 F.3d at 442 (citing *Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005)).

B.    Application of Section 1915(g)

Defendants have offered the specifics of previously dismissed actions in support of their section 1915(g) motion, persuasively demonstrating the existence of at least three prior "strikes" in this instance, and the court thus need not linger in addressing the issue. Defendants' Memorandum (Dkt. No. 41-2) at 3.  Indeed, Welch does not dispute that he has garnered at least three strikes prior to his filing the current action in this court.  *See* Dkt. No. 43.  On March 16, 2000 – well before the filing of this suit – a decision of District Judge Thomas J. McAvoy, dismissing plaintiff's complaint in another action based on the

_____

because of the potentially significant consequences flowing from such a finding, a court should not, when dismissing an inmate complaint, contemporaneously signal whether the dismissal should count as a "strike" for the purposes of that section. *DeLeon v. Doe,* 361 F.3d 93, 95 (2d Cir. 2004); *see also Snider v. Melindez*, 199 F.3d 108, 115 (2d Cir. 1999) ("We . . . doubt whether the entry of a strike is properly considered at the time an action is dismissed.").

11

fact that he had accumulated three strikes because at least three of his prior federal suits had been dismissed as frivolous, was affirmed by the Second Circuit.[3]  *Welch v. Galie*, 207 F.3d 130, 131-32 (2d Cir. 2000) (affirming *Welch v. Galie*, No. 97-CV-1369, Dkt. Nos. 119, 131 (N.D.N.Y.) (TJM/DRH)); *see also Welch v. Fisher*, No. 07-CV-929, Dkt. No. 8 at 2-3 (N.D.N.Y.) (TJM/DEP) (acknowledging that plaintiff earned three strikes status seven years ago as determined in *Welch v. Galie*, 207 F.3d 130 (2d Cir. 2000)).  That finding is entitled to preclusive effect in this action, *see Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288-89 (2d Cir. 2002), thus eliminating defendants' need to independently establish the existence of three strikes for purposes of this action.

Since defendants have established the filing by plaintiff of at least three meritless civil rights complaints while confined as a New York State prison inmate, absent applicability of the imminent danger exception set out in the relevant statute, plaintiff is subject to the provisions of 28 U.S.C. § 1915(g), and may properly be required to prepay in full the applicable filing fee in order to pursue his claims notwithstanding that IFP status was

_____

[3]      In that decision, the Second Circuit went so far as to determine that one of those dismissals, which occurred before the enactment of section 1915(g), nonetheless constituted a "strike" under the statute.  *Galie*, 207 F.3d at 132.

previously conferred.  *See McFadden v. Parpan,* 16 F. Supp. 2d 246, 247-48 (E.D.N.Y. 1998).

    C.    Imminent Danger Exception

    As a safety valve, obviously intended to protect a prison inmate exposed to potential danger from the harsh consequences of his or her earlier folly, section 1915(g) provides that a prisoner who is in "imminent danger of serious physical injury" may avoid application of the three strikes rule of section 1915(g).  *See* 28 U.S.C. § 1915(g); *see also Malik v. McGinnis*, 293 F.3d 559, 562-63 (2d Cir. 2002).  This exception requires a showing that the prisoner was under such imminent danger at the time of filing; the exception does not provide a basis to avoid application of the three strikes provision on the basis of past harm.  *Malik*, 293 F.3d at 562-63.  An inmate who claims the benefit of this exception must also show that the danger faced rises to the level of a "serious physical injury." 28 U.S.C. § 1915(g).  The imminent danger an inmate faces, moreover, must be real, and not merely speculative or hypothetical. *Johnson v. Barney*, No. 04 Civ. 10204, 2005 WL 2173950, at *1-2 (S.D.N.Y. Sept. 6, 2005) (finding that inmate's allegation of danger at facility he was not housed at, but may pass through at infrequent occasions in the future, did not

13

establish imminent danger).

The term "serious physical injury", as utilized in section 1915(g), is nowhere concretely defined, although it has been construed by various courts as including a "disease that could result in serious harm or even death[.]"  *Ibrahim*, 463 F.3d at 7.  In deciding whether to invoke the exception, a court must examine the available pleadings, construed in a light most favorable to the plaintiff, to determine whether the plaintiff has alleged a serious physical injury.  *McAlphin v. Toney*, 281 F.3d 709, 710 (8th Cir. 2002).  Conditions which have been held to rise to a sufficient threshold level include denial of treatment for infected gums, resulting in damages of infection, *McAlphin*, 281 F.3d at 710; denial of adequate treatment for Hepatitis C, a "chronic and potentially fatal disease," *Ibrahim*, 463 F.3d at 6-7; and heart palpitations, chest pains and labored breathing, *Ciarpaglini v. Saini*, 352 F.3d 328, 330-31 (7th Cir. 2003) (finding upon reaching the merits, however, that plaintiff's complaint did not state an Eighth Amendment claim).

Plaintiff's claims in this action stem chiefly from his belief that he is the subject of an elaborate conspiracy by DOCS officials, in conjunction with the FBI, to fabricate his mental illness, to falsify misbehavior reports

14

against him, to poison his food, to keep him in disciplinary confinement, and to injure and/or kill him.  Welch further insists that he confronts imminent danger of serious physical injury because he has been diagnosed with Hepatitis C, which derived from the conspirators' contamination of his food and insistence that he share cells with diseased individuals, and had been denied treatment for this condition while at Clinton, only recently receiving care for the disease since his relocation to Coxsackie Correctional Facility.

Plaintiff filed his complaint while he was housed at Auburn Correctional Facility, although it addresses circumstances which occurred during the course of his confinement at Auburn, Clinton and Gouverneur. Since the imminent danger exception only applies to danger existing at the time the complaint was filed, *Malik* 293 F.3d at 563, to the extent that Welch's allegations concern events that occurred at the Clinton and Gouverneur facilities, prior to his confinement at Auburn and the filing of his complaint, these claims do not provide any grounds for me to find that plaintiff faces imminent danger of serious physical injury.  *See also Abdul-Akbar v. McKelvie*, 239 F.3d 307, 315 (3d Cir. 2001) ("By using the term 'imminent', Congress indicated that it wanted to include a safety valve for

the 'three strikes' rule to prevent impending harms, not those harms that had already occurred."); *McFadden*, 16 F. Supp. 2d at 247 (specifying that imminent danger must occur at the time the plaintiff seeks to file the suit, and not at the time of the alleged incidents).  Likewise, in his opposition to defendants' motion to dismiss, plaintiff has attempted to interject a previously unasserted claim that he confronts imminent danger of serious physical injury based on the failure of prison officials to treat his Hepatitis C condition while he was confined at Clinton.  Plaintiff, however, did not propound this claim in his complaint now before the court.  Based on the pleadings before me, it is apparent that this allegation also does not relate to circumstances in existence at the time he filed this lawsuit, and therefore does not provide a basis for me to find that plaintiff is under imminent danger of serious physical injury.[4]

Moreover, the question of whether claims strikingly similar to those now advanced by plaintiff Welch, regarding the alleged conspiracy against

_____

[4]      While plaintiff's complaint alleges in wholly conclusory terms that defendants' conspiracy against him is both systemic and ongoing, it is arguable that he can no longer satisfy the imminent danger exception requirement in light of his transfer, after commencement of the action, to the Orleans Correctional Facility, where he is currently housed.  *Cf. Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) (indicating that the transfer of an inmate plaintiff complaining of civil rights violations out of the prison facility in which those violations are alleged to have occurred moots any claim for injunctive relief against prison officials of the transferring facility).

him, meet the imminent danger exception under section 1915(g) was previously addressed in *Welch v. Samuels*, No. 02-CV-1077 (N.D.N.Y. 2002) (TJM/GLS) (Defendants' Motion (Dkt. No. 41) Exh. 1) and *Welch v. Fisher*, 07-CV-929 (N.D.N.Y. 2007) (TJM/DEP), two of the many other civil rights actions brought by him in the Northern District of New York.  In his decision in *Welch v. Samuels*, District Judge McAvoy noted that the claim being raised, to the effect that the plaintiff was the target of a conspiracy by DOCS employees to kill him, was not new but instead was similar to claims raised in previously-filed actions and dismissed as "patently frivolous", and did not establish the existence of imminent danger.[5]  *See Samuels*, No. 02-CV-1077, Dkt. No. 9 at 3.  Five years later, in his recent decision in *Welch v. Fisher*, Judge McAvoy determined that plaintiff's allegations of "a long-standing conspiracy" consisting of efforts by DOCS officials to confine him to cells, to contaminate his food, and to poison him were factually unsupported and did not demonstrate that he was under imminent danger of serious physical injury.[6]  *Fisher*, No. 07-CV-929, Dkt.

---

[5]     Judge McAvoy reiterated this determination in his denial of plaintiff's subsequent motion for reconsideration, *Samuels*, No. 02-CV-1077, Dkt. No. 12, which was affirmed by the Second Circuit on appeal, *id.* at Dkt. Nos. 15, 19.

[6]     Welch has appealed this ruling to the Second Circuit, and awaits a

No. 8 at 4-5.

Finding nothing in plaintiff's complaint in this action to distinguish the present circumstances from the aforementioned cases previously decided by District Judge McAvoy, I likewise conclude, and therefore recommend a finding to the effect, that plaintiff has failed to demonstrate the existence of imminent danger of serious physical injury of the extent contemplated by Congress when enacting section 1915(g).

D.    Motion for Sanctions

In response to defendants' motion to dismiss, plaintiff has cross-moved for sanctions under Rule 11 of the Federal Rules of Civil Procedure on the ground that the motion is frivolous, specifically seeking

_____

determination from that court.  *Fisher*, No. 07-CV-929, Dkt. No. 13.

18

an order striking defendants' motion papers.[7, 8]  *See* Dkt. Nos. 43, 46.

Rule 11 of the Federal Rules of Civil Procedure authorizes sanctions under various circumstances, including where 1) an attorney has certified groundless and frivolous papers; 2) a document has been presented for an improper purpose, such as to harass or cause unnecessary delay or expense; 3) the claims or defenses are not supported by law; and/or 4) the allegations and other factual contentions lack evidentiary support. Fed. R. Civ. P. 11.  The imposition of sanctions is purely discretionary, and that discretion should be exercised only when improper conduct is clear.  *Ehrich v. Binghamton City Sch. Dist.*, 210 F.R.D. 17, 26 (N.D.N.Y.

---

[7]    Plaintiff also faults defendants for failing to file any affidavit in conjunction with their motion to dismiss as required by Northern District of New York Local Rule 7.1(a)(2).  *See* Dkt. No. 43.  Contrary to plaintiff's assertion, the lack of an affidavit provides no basis for the imposition of Rule 11 sanctions in this matter.  While under a literal interpretation of the court's local rules an affidavit could arguably have been required to support defendants' motion, *see* N.D.N.Y.L.R. 7.1(a)(2), the motion is in the nature of a dismissal motion; such motions are generally exempted from the affidavit requirement, *see id.*  In any event, the court is authorized, and in this instance does, overlook this potential, technical shortcoming under the court's local rules.  *See Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules.").

[8]    Plaintiff further contends that defendants utilized their motion as a dilatory tactic to "stall time" for the court to rule on plaintiff's request to file an amended complaint.  *See* Dkt. No. 43.  This prong of plaintiff's cross-motion also lacks merit, particularly in light of the fact that the court issued a ruling denying plaintiff's request to amend approximately one month after defendants filed their motion.  *See* Dkt. No. 44.

19

2002) (Sharpe, M.J.).  A test of objective unreasonableness is employed to assess whether conduct is sanctionable; that is, the conduct must be "totally without merit or utterly lacking in support."  *Id.*  The alleged improper conduct should be assessed based on the following factors:  1) whether the conduct was willful or negligent; 2) whether the conduct reflected a pattern of behavior or an isolated event; 3) whether the conduct infected the entire proceeding; 4) whether the individual engaged in similar conduct in the past; and 5) the effect on the litigation in time or expense.  *See id.*

As evidenced by the sound basis on which defendants have grounded their motion, plaintiff is wholly unable to demonstrate that defendants engaged in any improper conduct under Rule 11.  In light of my determination that defendants' motion to dismiss indeed has merit and should be granted, I recommend that plaintiff's motion for Rule 11 sanctions be denied as academic.

IV.    SUMMARY AND RECOMMENDATION

The record now before the court firmly establishes that at least three prior civil rights actions – and by all accounts a substantially greater number – brought by the plaintiff while a prison inmate have been

20

dismissed on their merits for failure to state claims upon which relief may be granted. The record also fails to reveal any basis to conclude that the plaintiff is in imminent danger of serious physical injury, and thus entitled to exemption from the three strikes provision of 28 U.S.C. § 1915(g). Given the meritorious nature of defendants' motion, plaintiff is not entitled to any of the sanctions available under Rule 11. Accordingly, particularly in light of the fact that the net result of these findings is not denial altogether of plaintiff's access to the courts, but instead only the requirement that he conclude that pursuit of his civil rights claims in this action justifies expenditure of the full applicable filing fee, it is hereby

RECOMMENDED that:

1) The order granting the plaintiff IFP status (Dkt. No. 6) be VACATED;

2) Defendants' motion seeking dismissal of plaintiff's complaint (Dkt. No. 41) be GRANTED as to all defendants and all claims unless Welch pays the full required filing fee of $350.00 within thirty days after the entry of a final order by the district judge addressing this recommendation;

3) Plaintiff's cross-motion seeking the imposition of sanctions

against defendants pursuant to Rule 11 of the Federal Rules of Civil Procedure (Dkt. No. 46) be DENIED; and it is further

ORDERED that pending final determination with respect to this report and recommendation and, if approved, the payment by plaintiff of the required filing fee, all discovery in this action be and is hereby STAYED.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:      December 13, 2007
            Syracuse, NY

David E. Peebles
U.S. Magistrate Judge